IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| KENT PRUETT<br><br>    Plaintiff,<br><br>vs.<br><br>SHELBY COUNTY BOARD OF EDUCATION and DORSEY E. HOPSON, II, in his official capacity as Superintendent of the Shelby County Schools,<br><br>    Defendants. | CIVIL ACTION NO. 2:13-cv-2905 |

## VERIFIED COMPLAINT

Comes now Plaintiff, Kent Pruett, and avers the following:

### INTRODUCTION

1. This is a civil rights action challenging Shelby County Board of Education Policy 7002 – on its face and as applied – that precludes Plaintiff Kent Pruett from accessing school facilities that are open to other groups and individuals. Acting on this written policy, Defendants have denied and continue to deny equal access to Plaintiff and his group because of the pro-life viewpoint of their speech, representing a flagrant violation of the First and Fourteenth Amendments to the United States Constitution.

2. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff Kent Pruett seeks injunctive relief, declaratory relief, and nominal damages against Defendants Shelby County Board of Education and Dorsey E. Hopson, II, in his official capacity as Superintendent for Shelby County Schools.

3. This action is premised on the United States Constitution and concerns the deprivation of Plaintiff's fundamental right to free speech, peaceable assembly, due process, and equal protection.

4. Defendants' actions have deprived and will continue to deprive Plaintiff of his fundamental rights as provided in the First and Fourteenth Amendments to the United States Constitution.

5. Each and every act of Defendants alleged herein was committed by Defendants named herein, and each and every act was committed under the color of state law and authority.

## JURISDICTION AND VENUE

6. Pursuant to 28 U.S.C. §§ 1331 and 1343, this Court has jurisdiction over Plaintiff's claims. Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction over Plaintiff's request for declaratory relief.

7. Pursuant to 28 U.S.C. § 1391(b), venue is proper in Western District of Tennessee, because all claims arise out of this district and Defendants reside in this district.

## PLAINTIFFS

8. Plaintiff Kent Pruett (Pruett) is a resident of Memphis, Tennessee.

## DEFENDANTS

9. Defendant Shelby County Board of Education (also referred to as Board) is a public entity established, organized, and authorized under and pursuant to the laws of Tennessee, with authority to sue and be sued in its own name.  The Board acts the governing body for Shelby County Schools unified school district and sets policy for the school system.

10. Defendant Dorsey E. Hopson, II is Interim Superintendent for Shelby County Schools, having been appointed to this position by the Board.  In his official capacity, he is

responsible for carrying out the policies and procedures of the Board.  This Defendant is sued in his official capacity.

## STATEMENT OF FACTS

### Pruett's Expressive Activities and Peaceable Assemblies Regarding Abortion

11. Pruett believes a human fetus is a living person made in the image of God. Consequently, Pruett believes abortion is the wrongful killing of a pre-born baby and is morally wrong.

12. Because of these firm convictions, Pruett has been compelled to share his views about abortion and assemble with like-minded individuals ever since the U.S. Supreme Court upheld a legal right to abortion in the case of *Roe v. Wade* in 1973.

13. Following the *Roe v. Wade* decision, Pruett has been committed to advocating and defending the rights of the unborn in Memphis and Mid-South.

14. A few years following *Roe v. Wade*, in 1976, Pruett began associating and assembling with individuals who share his beliefs and passion about the abortion issue through the Memphis Chapter of Tennessee Volunteers for Life.  Beginning in 1988, Pruett became affiliated with Tennessee Citizens Concerned for Life, Inc.  And then later, in 2011, Pruett began to associate and assemble with the Shelby County Chapter of Tennessee Right to Life.

15. Starting in 1977, and every year since, Pruett has helped organize gatherings of pro-life individuals in the Memphis and Mid-South area on the anniversary date of *Roe v. Wade* to commemorate lives of the unborn children that have been lost since that Supreme Court decision.

16. Pruett has assisted in the effort of putting on these pro-life gatherings on the anniversary date of *Roe v. Wade* for thirty-seven (37) consecutive years. He has attended every gathering during this time span, except for 1990, when he participated in a national pro-life event.

17. In 1977, 1978, and 1979, Pruett met up with like-minded individuals on the anniversary of *Roe v. Wade* in outdoor venues in Memphis. But, in 1979, it was very cold, which affected the attendance and participation in the event.

18. From that point on, Pruett and others involved desired to have an indoor facility for the *Roe v. Wade* anniversary event. To accommodate the number and location of participants, from 1980 to 2006, Pruett and his affiliated groups rented out the auditorium at Central High School in Memphis for twenty-seven (27) straight years to hold these annual pro-life gatherings.

19. In 2007 and 2008, Pruett arranged to have the *Roe v. Wade* anniversary event take place at Immaculate Conception Cathedral in Memphis. The accommodations were suitable for the gathering, but Pruett and the others involved in putting on the event were concerned about the attendance and whether some would perceive the event as being only for Catholics.

20. In light of this concern, for 2009 and 2010, Pruett arranged to have the gathering back at the auditorium at Central High School in Memphis.

21. Then, in both 2011 and 2012, to accommodate one of the sponsors of the event, the pro-life event took place at a private venue in Bartlett, Tennessee.

22. Throughout the years, these pro-life events have had speakers addressing the ramifications of the *Roe v. Wade* decision and lives lost due to abortion. Also, during these

gatherings, much time has been devoted to prayer for the protection of human life in Memphis and Mid-South, and all across the nation.

### Denial of Use of Public Space for the 2013 Pro-Life Event

23. For the 2013 pro-life event, Pruett once again led the effort in finding appropriate space. He began working on this project in the fall of 2012.

24. Pruett and the others involved in putting on the event determined that the venue needed to be large enough to accommodate 250 people or more, centrally located, and reasonably priced. Accordingly, Pruett determined that the Bartlett venue was inadequate and they needed to meet at one of the public schools in Memphis, as they had in years past.

25. Pruett and others involved in Shelby County Chapter of Tennessee Right to Life decided that the auditorium at White Station High School in Memphis would be their best option, meeting the criteria for size, location, and cost.

26. At that time, in 2012, when Pruett was seeking to make arrangements for use of the space, White Station High School was under the authority of the Memphis City School System. As it did during the years when Pruett secured the auditorium at Central High School, the Memphis City School System had in place a policy facilitating community use of school facilities, allowing for the rental of educational and administrative facilities for non-profit purposes on a short-term basis, including use of the auditorium at White Station High School.

27. Due to his previous experience with the rental process, Pruett presumed they could obtain the White Station auditorium for the 2103 pro-life event just like they had secured the one at Central High School for all those years in the past.

5

28. In the early fall of 2012, Pruett contacted Brenda Abraham with the Memphis City School System to rent the auditorium at White Station High School for the 2013 pro-life event. But Pruett was told by Ms. Abraham that the school system could not accept an application for space until ninety days before the scheduled event.

29. Pruett waited for the requisite time to pass, and then, on October 30, 2012, he called Ms. Abraham again. Pruett advised of his intention to submit application for use of space.

30. To Pruett's surprise, Ms. Abraham informed that approval for use was doubtful because of school policy prohibiting the use of space for staging of protests.

31. Ms. Abraham directed Pruett to school policy, Memphis City School Policy 3.205, stating that facility use would not be approved for "[t]he staging and/or disbanding of any protest march, demonstration, or like activity aimed or directed toward any segment of the community."

32. Pruett was disturbed by this revelation from Ms. Abraham that they could be denied use of space for the pro-life event. They never incurred this problem in the past and Pruett believed they had a right to access the facility.

33. On the next day, October 31, 2012, Pruett faxed Ms. Abraham a letter, attaching a filled-out application for use of the auditorium. Pruett also clarified in the letter they would not stage a protest against another organization, as the purpose was to have a pro-life rally commemorating the anniversary of *Roe v. Wade*.

34. In the application form entitled "Rental Request Form," Pruett listed himself as the person responsible, gave his contact information, and signed it. Pruett specified that they were seeking use of the auditorium at White Station High School on Sunday, January 20, 2013

6

from 1:00 to 3:00 p.m., expecting attendance of 250 people, with no charge for admission, for a "Pro-Life Rally." No other information was sought in the form.

35. The application and request was subsequently forwarded to the office of the General Counsel for the Memphis City Schools. At that time, the General Counsel was Dorsey E. Hobson, II. (Hobson). Pruett's application for use was denied by Hobson's office.

36. On November 1, 2012, Kimberly Harris, (Harris) Executive Assistant to the General Counsel, emailed news of the denial to Jake Allen (Allen), an employee with the Memphis City School System, who, in turn, emailed Pruett and informed him of this decision.

37. Allen's email forwarded the email he received from Harris, which read:

From: KIMBERLY G. HARRIS
Sent:  Thursday, November 01,2012 12:07 PM
To:  JAKE E ALLEN
Subject:  Pro Life Rally

"Jake:

The request for the pro life rally is denied.  Board Policy 3.205."

**New Email Address:  harriskg@mcsk12.net**

Kimberly G. Harris
Memphis City Schools
Office of the General Counsel
2597 Avery Avenue, Room 115
Memphis, Tennessee 38112
(901) 416-6370 Office
(901) 416-6374 Fax
harriskg@mcsk12.net

<3.205 Real Estate.pdf>

38. Allen attached the relevant policy and commented in his email to Pruett:

From:  JAKE E ALLEN <allenje@MCSK12.net>
Date:  November 1, 2012 12:16:25 PM CDT

7

>To: "kentpruett@bellsouth.net" <kentpruett@bellsouth.net>
>Cc: KIMBERLY G HARRIS HARRISJOHNSONKG@MCSK12.NET," "BRENDA ABRAHAM" abrahamb@MCSK12.net
>Subject: FW: Pro Life Rally –
>
>"Mr. Pruett,
>
>Per MCS Board Policy 3.205 Real Estate, the proposed Pro Life Rally event scheduled for White Station High School on January 20, 2013 had been denied.  Please see MCS Board Policy 3.205 attached to this email.  For your convenience, I have highlighted the relevant section in yellow.
>
>Thanks,
>Jake"

39. The portions of the policy that were highlighted in yellow are as follows:

(1) Short-Term Rental of Educational and Administrative Facilities

>The district may authorize the short-term rental of its facilities as deemed by the Board to be in the best interest of the district and community when facilities are not being used for school purposes.  Although facilities are available for short-term rental by community agencies and groups, programs operated by the school system take precedence in the use of facilities.  Some limitations and exceptions to the use of Board facilities shall apply, including adherence to local ordinances and regulations. Board facilities shall not be approved for:
>
>***
>
>- The staging and/or disbanding of any protest march, demonstration, or like activity aimed or directed toward any segment of the community.

40. Upon receipt of this communication form Allen, on that same day, Pruett emailed him back, objecting to this decision.

**<u>Confirmation of School Policy Denying Space for Pro-Life Event</u>**

41. Having not heard back from Allen, Harris, or anyone else affiliated with the school system, Pruett retained counsel to obtain relief from the school policy.  By letter dated November 26, 2012, counsel for Pruett wrote Hopson in his capacity as General Counsel for Memphis City Schools.

8

42. In this letter, counsel advised of the unconstitutional nature of the exclusion, preventing the Pruett and his group from having equal access to the public facility due to an unconstitutional restriction. Counsel asked that the policy be suspended from enforcement against Pruett and his group and be repealed as soon as practicable.

43. No response to this letter was forthcoming. Pruett and other pro-life individuals in Memphis and Mid-South were effectively precluded from using the auditorium at White Station High School on January 20, 2013. They were forced to go back to Bartlett for the pro-life event.

**Continuing Adverse Impact of School Policy Denying Space for Pro-Life Event**

44. Shortly after the 2013 event, Pruett began looking forward to the 2014 event. The 2014 pro-life event is particularly noteworthy because this rally, marking the 41st anniversary of *Roe v. Wade*, will precede an important vote in the State of Tennessee on an abortion-related issue.

45. Pruett and other pro-life individuals in the Memphis community believe use of the auditorium at White Station High School is critical for 2014 to assure a good turn-out for the event.

46. As of July 1, 2013, the administration of Memphis City Schools was effectively turned over to Shelby County Schools. Taking over the administration of Memphis City Schools, Shelby County Schools also took over liabilities of that school system.

47. Hopson was subsequently appointed by the Board to be Superintendent for Shelby County Schools.

9

48. Shelby County Board of Education policy now controls use of the space at White Station High School.

49. Pruett was troubled to learn that Shelby County Schools has the very same policy used by the previously-existing Memphis City School System. Specifically, Shelby County Board of Education Policy 7002 reads:

(1) Short-Term Rental of Educational and Administrative Facilities

The district may authorize the short-term rental of its facilities as deemed by the Board to be in the best interest of the district and community when facilities are not being used for school purposes. Although facilities are available for short-term rental by community agencies and groups, programs operated by the school system take precedence in the use of facilities. Some limitations and exceptions to the use of Board facilities shall apply, including adherence to local ordinances and regulations. Board facilities shall not be approved for:

***
- The staging and/or disbanding of any protest march, demonstration, or like activity aimed or directed toward any segment of the community.

50. But Pruett still hoped the policy would change post-merger. Pruett called Shelby County Schools, and was directed to Allen, who now works in the same capacity with Shelby County Schools. Pruett inquired about use of the auditorium at White Station High School in January of 2014. Because the event was pro-life in nature, Allen indicated that there would be a problem with Pruett and his friends using the space.

51. On August 21, 2013, Pruett spoke with Allen again. Referencing the previous conversation, Pruett followed up and asked if there was a policy that prevented use of the space. Allen explained that the school system did now want to be connected to a "controversial' group. Pressing the matter, Pruett asked if there was any way he and his group could rent public school

10

space for a pro-life rally. Allen said he would contact the Shelby County General Counsel's office about the matter.

52. Within thirty minutes, Harris returned Pruett's telephone call on Allen's behalf. Like Allen, Harris is still working in the same capacity, which, in her case, is in the office of General Counsel for Shelby County Schools. She confirmed that the Shelby County School policy was the same as the Memphis City School policy and that Pruett would not be allowed to use school facility space for a pro-life gathering.

53. Speaking on behalf of Shelby County Schools, Harris concluded: "The Superintendent and the General Counsel are taking the same position as they did last year."

54. Pruett is planning to have a pro-life rally Sunday, January 19, 2014. But for fear of censorship and reprimand, Pruett is deterred from applying to use the auditorium at White Station High School for the 2014 pro-life event or any future events.

55. The ban on his pro-life rally severely limits Pruett from engaging in constitutionally-protected expression in a public facility maintained by the Board, including the auditorium at White Station High School.

56. Defendants have permitted and continue to permit other persons to use the auditorium at White Station High School and facilities comparable to it for expressive gatherings, events and other activities approximating those for which Pruett seeks to use the same, except that the messages and viewpoints differ from proposed by Pruett.

57. The impact of precluding Pruett from exercising his constitutional rights, and denying him and his group equal access to a public facility, constitutes irreparable harm to Pruett.

58. Pruett does not have an adequate remedy at law for the loss of his constitutional rights.

### FIRST CAUSE OF ACTION

### Violation of Freedom of Speech

59. Pruett's pro-life speech is protected speech under the First Amendment.

60. Defendants' policy and practices, and enforcement thereof, including, but not limited to the policy used to deny Pruett access:

    a. are vague and overbroad;

    b. single out controversial speech for discriminatory treatment;

    c. discriminate against speech on the basis of the speaker's viewpoint;

    d. restrain constitutionally-protected speech in advance of its expression, without appropriate guidelines or standards to guide the discretion of officials charged with enforcing the policy;

    e. chill the free speech of Pruett and other third-party citizens;

    f. create a designated public forum and excludes messages solely because of the content of those messages;

    g. allow for the exercise of unbridled discretion;

    h. lack narrow tailoring, fail to achieve any legitimate government purpose, and fail to leave open alternative avenues for expression; and

    i. are unreasonable.

61. Defendants have no compelling or legitimate reason that can justify their censorship of viewpoints sought to be expressed by Pruett.

62. Defendants' policy and practices, and the enforcement thereof, thus violate the Free Speech Clause of the First Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment.

WHEREFORE, Pruett respectfully prays the Court grant the equitable and legal relief set forth in the prayer for relief.

## SECOND CAUSE OF ACTION

### Violation of Freedom of Peaceable Assembly

63. Pruett, in trying to secure public space for the anniversary of *Roe v. Wade*, seeks to peaceably assemble with like-minded individuals regarding their collective disagreement with state and national polices on the issue of abortion.

64. By prohibiting Pruett from having access to public space for gatherings involving "[t]he staging and/or disbanding of any protest march, demonstration….", Defendants interfere with and violate Pruett's freedom to peaceable assembly.

65. Defendants have no compelling or legitimate reason that can justify this interference with the right to peaceably assemble.

66. The policy and Defendants' enforcement thereof, violate the Freedom to Peaceably Assemble Clause of the First Amendment to the United States Constitution.

WHEREFORE, Pruett respectfully prays the Court grant the equitable and legal relief set forth in the prayer for relief.

## THIRD CAUSE OF ACTION

### Violation of the Due Process Clause

13

67. Defendants' policy is vague and lacks sufficient objective standards to curtail the discretion of officials. This allows Defendants ample opportunity to enforce the policies in an *ad hoc*, arbitrary, and discriminatory manner.

68. Defendants have no compelling or legitimate reason that can justify their vague policy.

69. The policy and Defendants' enforcement thereof, violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Pruett respectfully prays the Court grant the equitable and legal relief set forth hereinafter in the prayer for relief.

## FOURTH CAUSE OF ACTION

### Violation of the Equal Protection Clause

70. Under their policy, Defendants allow the school facilities to be used for civic, cultural, and educational reasons, but single out and prohibit Pruett and his pro-life group from using public facilities.

71. Defendants allow similarly-situated individuals to use school facilities and engage in a wide variety of speech and expression while refusing Pruett to the same access.

72. Defendants' enforcement of their policy intentionally treats Pruett and his pro-life group differently from other similarly-situated citizens because of the viewpoint and content of their expression and purpose of their assembly.

73. Defendants have no compelling or legitimate reason that can justify their disparate treatment of Pruett.

74. The policy and practice, Defendants' enforcement thereof, therefore violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Pruett respectfully prays the Court grant the equitable and legal relief set forth hereinafter in the prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Pruett respectfully prays for relief in that this Court:

A. Assume jurisdiction over this action;

B. Enter a judgment and decree declaring that the Shelby County Board of Education Policy 7002 prohibiting access to for "[t]he staging and/or disbanding of any protest march, demonstration, or like activity aimed or directed toward any segment of the community" is unconstitutional on its face and as applied to Pruett's desired speech because it violates his rights and the rights of third parties not before the Court, as guaranteed under the First and Fourteenth Amendments to the United States Constitution;

C. Enter a preliminary and permanent injunction enjoining defendants, their agents, officials, servants, employees, and all persons in active concert or participation with them, or any of them, from applying Shelby County Board of Education Policy 7002 so as to restrict constitutionally-protected speech of speakers, including Pruett, who wish to use school facilities for expressive purposes;

D. Adjudge, decree, and declare the rights and other legal relations with the subject matter here in controversy, in order that such declaration shall have the force and effect of final judgment;

E. That this Court award Plaintiff nominal damages arising from the acts of the

15

Defendants as an important vindication of the constitutional rights;

  F. That this Court award Plaintiff his costs and expenses of this action, including reasonable attorneys' fees, in accordance with 42 U.S.C. § 1988 and other applicable law; and

  G. Grant such further relief as appears to this Court to be equitable and just.

          Respectfully submitted,

s/ Nathan W. Kellum
Nathan W. Kellum
TN BAR #13482; MS BAR # 8813
CENTER FOR RELIGIOUS EXPRESSION
699 Oakleaf Office Lane, Suite 107
Memphis, TN 38117
(901) 684-5485 – Telephone
(901) 684-5499 – Fax
Email:  nkellum@crelaw.org

HOLLEY, ELDER & MCWHIRTER, P.C.
By: H. Chase Pittman
TN Bar #22977; MS Bar #101388
Corporate Gardens
9032 Stone Walk Place
Germantown, TN 38138-7824

Attorneys for Plaintiff, Kent Pruett

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY, this 20th day of November, 2013, that a copy of the foregoing Complaint, along with the Motion for Preliminary Injunction and Summons, has been/will be delivered to a process server for personal service upon the defendants.

          s/ Nathan W. Kellum
          Attorney for Plaintiff

## VERIFICATION OF COMPLAINT

I, Kent Pruett, a citizen of the United States and a resident of _Memphis, TN_, hereby declare that I have read the foregoing Verified Complaint and the factual allegations therein, and the facts as alleged therein are true and correct.

_/s/ Kent Pruett_